David SIEGAL and Ethel Siegal,
Plaintiffs,

v.

David MERRICK et al., Defendants.

Harry GEHLER, Plaintiff,

v.

William R. HEARST, Jr., et
al., Defendants.

Nos. 74 Civ. 2475, 74 Civ. 2630.

United States District Court,
S. D. New York.

Oct. 24, 1979.

Gold, Farrell & Marks by Martin R. Gold, Jane Stevens, New York City, for plaintiffs David and Ethel Siegal.

John H. Olding, New York City, for proposed intervenor Walter M. Lucker.

Rosenman, Colin, Freund, Lewis & Cohen by Max Freund, Joseph Zuckerman, New York City, for defendant Twentieth Century Fox-Film Corp.

## MEMORANDUM OPINION

MOTLEY, District Judge.

On August 31, 1979, this court issued an opinion and accompanying order providing that proposed intervenor Lucker would "have twenty days from the date of this order to make a demand on the current board of directors of Fox [defendant Twentieth Century-Fox Film Corp.], in compliance with Rule 23.1, Fed.R.Civ.P., or state in detail his reasons for not doing so." The court's order further provided that if the proposed intervenor "fails to comply with this order, or if the court finds that the reasons he gives are insufficient to excuse demand on the directors, then his motion to intervene will be denied with prejudice. In that event, these consolidated actions will be dismissed."

In a letter dated September 17, 1979, the proposed intervenor informed the court that he had made a demand upon the board of directors of Fox; the proposed intervenor requested permission to file an amended complaint in order that his application to intervene might be granted. On September 18, 1979, the court granted the proposed intervenor's motion for leave to file an amended complaint. On September 21, 1979, the proposed intervenor filed his amended complaint.

In a letter dated September 25, 1979, defendant Fox requested that the court recall its order dated September 18, 1979, which had granted the proposed intervenor leave to amend. The court construed the

letter as a motion to vacate its order of September 18, 1979. Oral argument was heard on October 19, 1979.

Following oral argument on October 19, 1979, this court entered the following order:

The motion to vacate this court's order of September 18, 1979 allowing intervenor Lucker to file an amended complaint in accordance with this court's opinion and order of August 31, 1979 is granted. Intervenor is allowed until November 30, 1979 to file a revised amended complaint after a response to his demand has been acted upon by the Board. Brief memorandum opinion will follow.

In accordance with the October 19, 1979, order, the memorandum opinion herein is issued.

Defendant Fox has advanced three arguments in support of its motion to vacate the order of September 18, 1979, which granted the proposed intervenor's motion for leave to file an amended complaint. First, it is argued, the amended complaint of proposed intervenor Lucker is insufficient as a matter of law because it does not allege what response to Lucker's demand was made by the "Special Review Committee" of defendant Fox. Second, it is argued, the amended complaint is insufficient as a matter of law because it does not satisfactorily allege an excuse for the fact that no demand has been made upon the Fox shareholders to bring this action. Third, it is argued, the proposed intervenor failed to give notice of his motion for leave to file an amended complaint, in violation of Rules 5(a), 6(d), and 6(e) of the Federal Rules of Civil Procedure.

Without deciding upon the merits of defendant Fox's other arguments in support of its motion to vacate, this court concludes that the amended complaint should not be accepted by the court at this time, as it does not allege what response to proposed intervenor's demand was made by the Special Review Committee.

Rule 23.1 of the Federal Rules of Civil Procedure provides that in a derivative action brought by one or more shareholders "[t]he complaint shall . . . allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action for not making the effort."

██ The purpose of this demand requirement of Rule 23.1 is "to give the derivative corporation itself the opportunity to take over a suit which was brought on its behalf in the first place, and thus to allow the directors the chance to occupy their normal status as conductors of the corporation's affairs." *Brody v. Chemical Bank (Brody II)*, 517 F.2d 932, 934 (2d Cir. 1975). Thus, the underlying policy is that "[t]he federal courts should not interfere in the matters of private corporations, nor should they sanction the interference by shareholders with the duties of the board of directors unless it is clear that the board has no intention of taking appropriate action." *Brooks v. American Export Industries, Inc.*, 68 F.R.D. 506, 510 (S.D.N.Y.1975).

██ In light of the policy underlying Rule 23.1, it is clear that a party may not satisfy the demand requirement by alleging the making of a demand, without alleging what response, if any, was made thereto by the directors. To allow a party to satisfy the demand requirement without stating the response of the directors would be wholly at odds with Rule 23.1's purpose of giving the corporation an opportunity to take over a suit brought on its behalf. Unless a party bringing a derivative action alleges what response, if any, was made by the directors, it cannot be clear that the directors have no intention of taking appropriate action.

Thus, the principle that a party seeking to bring a derivative action must include in his allegations a statement of the directors' response has been well-established since the Supreme Court's holding in *Hawes v. Oakland*, 104 U.S. 450, 26 L.Ed. 827 (1881). In *Hawes*, a minority stockholder sought to bring a derivative action five days after he had made a written demand upon the board of directors to sue, and before the board of

directors had responded. The Court affirmed the lower court's dismissal of the complaint, stating:

[I]t is equally important that before the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. . . .

. . . .

It is needless to say that appellant's bill presents no such case as we have here supposed to be necessary to the jurisdiction of the court.

He merely avers that he requested the president and directors to desist from furnishing water free of expense to the city, except in case of fire or other great necessity, and that they declined to do as he requested. No correspondence on the subject is given. No reason for declining. We have here no allegation of a meeting of the directors, in which the matter was formally laid before them for their action. But within five days after his application to the directors this bill is filed. There is no allegation of fraud or acts *ultra vires,* or of destruction of property, or of irremedial injury of any kind.

*Id.* at 460–61.

In the case at hand, the proposed intervenor made his demand on the current Fox board of directors by letter dated September 11, 1979. On that date, the letter was mailed to the Chairman of the Board, General Council of Fox, and the Secretary of Fox—at Fox's New York and California offices. A copy of the demand letter was also mailed to Marvin E. Frankel, counsel for the Special Review Committee. The proposed intervenor's demand was not, in fact, received by Fox's California office until September 17, 1979—the same day that

Lucker's counsel requested permission to file an amended complaint. Clearly, this sequence of events did not allow Fox sufficient time—or any time at all, for that matter—to respond to Lucker's demand.

In fact, events subsequent to the proposed intervenor's September 17, 1979, request for leave to file an amended complaint indicate that Fox is presently considering the proposed intervenor's demand and that Fox is planning to respond shortly:

1) David Y. Handleman, general counsel for Fox, wrote a letter to Lucker dated September 20, 1979, in which Handleman acknowledged receipt of the September 11, 1979, demand letter and advised Lucker of the fact that the demand letter had been referred to the Special Review Committee for consideration.

2) Marvin E. Frankel, counsel to Fox's Special Review Committee, answered the proposed intervenor in a letter dated October 2, 1979:

Your letter of September 11, 1979, to the Board of Directors of Twentieth Century-Fox Film Corporation demanding that it continue to prosecute the claims asserted in the above actions has been referred to a Special Review Committee of the Board, to which I am counsel.

You may expect a response to your demand shortly.

3) In addition, Frankel wrote a letter to Max Freund dated October 12, 1979, which explained the Special Review Committee's preparation of a response to the proposed intervenor's demand:

The first occasion when the Special Review Committee was called upon to take formal action of any kind in this litigation occurred on or about September 20, 1979, when the Board referred to the Committee Mr. Lucker's demand letter of September 11, 1979. The Committee has proceeded apace since that time and is now in the final process of preparing its conclusions and determinations; I expect that it will respond to the demand within three weeks. Its deliberations and the preparation of its response to the demand

have taken longer than they otherwise would have because the three Committee members reside in California, Washington, D. C., and Europe, respectively.

Thus, it is clear that a response to the proposed intervenor's demand is currently being prepared and should be issued shortly. In light of the circumstances, it would seem appropriate to allow the proposed intervenor additional time in which to submit his amended complaint—this time including an allegation of what response was made by Fox.

In opposition to defendant Fox's motion to vacate the court's order of September 18, 1979, the proposed intervenor advances several arguments. First, it is argued, the case at hand may be distinguished from *Hawes v. Oakland, supra.* The proposed intervenor notes that, unlike the case at hand, *Hawes* did not involve an intervention in a pending action arising out of the same facts. This argument was, in effect, rejected by this court in its August 31, 1979, opinion in the case at hand: "It is clear at least in this Circuit that the demand requirement applies with equal force to an intervenor in a pending shareholders' derivative suit." *Siegal v. Merrick,* 74 Civ. 2475, slip op. at 16 (S.D.N.Y. Aug. 31, 1979). Thus, the proposed intervenor must fully satisfy the demand requirement, including the requirement of alleging the corporation's response, as established in *Hawes.*

■ Second, the proposed intervenor argues that a demand is futile in this case since the Fox board of directors is controlled by directors who are defendants in the current action. This argument overlooks the fact that the presence on, or even control of, the board by interested directors does not necessarily render a demand futile. It would seem well-established under Delaware law—which is applicable since Fox is a Delaware corporation—that a decision such as whether to proceed with a derivative action may be approved in the exercise of independent business judgment by the independent directors. *See Puma v. Marriott,* 283 A.2d 693, 695 (Del.Ch.1971). Moreover, it would seem clear that under Delaware

law Fox may choose to establish an independent committee to determine whether to prosecute a derivative action. *See Abbey v. Control Data Corp.,* 603 F.2d 724 (8th Cir. 1979) (applying Delaware law); 8 Del. General Corporation Law § 144. *See also Auerbach v. Bennett,* 47 N.Y.2d 619, 419 N.Y. S.2d 920, 393 N.E.2d 994 (1979). In short, proposed intervenor's suggestion that the control of the board by interested directors obviates the demand requirement is without support.

Third, the proposed intervenor argues that the futility of a demand is demonstrated by the fact that the Special Review Committee was created on April 9, 1979, and no action has yet been taken by the committee. Any assertion that a demand is futile would be difficult to maintain in light of the correspondence from Marvin E. Frankel. In his letter dated October 2, 1979, Frankel informed proposed intervenor Lucker that Lucker "may expect a response to [his] demand shortly." Moreover, in his letter dated October 12, 1979, Frankel explained why the committee had not yet taken action and that Lucker's demand would be answered within three weeks of that date. It would be contrary to the actual facts for this court now to accept the proposed intervenor's assertion that the demand to be considered by the Special Review Committee is futile or useless.

■ Finally, the proposed intervenor argues that he complied with this court's opinion of August 31, 1979, which provided: "[T]he court will allow Lucker twenty days from the date of this opinion and accompanying order within which to make a demand on the current board of directors or allege in detail his reasons for not doing so." *Siegal v. Merrick, supra,* at 17. While the proposed intervenor may have complied with this particular language in the court's August 31, 1979, opinion, certainly nothing in that opinion suggested that an amended complaint insufficient in any way could be submitted to this court. To the contrary, the court's opinion explicitly stated, "If Mr. Lucker fails to amend his pleadings in a proper manner or if the court finds that the

reasons alleged for failing to make demand upon the board are insufficient, then the motion to intervene will be denied with prejudice." In failing to allege in his amended complaint what response had been made by Fox, the proposed intervenor failed to amend his pleadings in a proper manner.

It does appear, however, that proposed intervenor Lucker did make a good faith attempt to submit his demand in time to receive a response from Fox. Following the court's opinion of August 31, 1979, the proposed intervenor mailed his demand to Fox on September 11, 1979. As counsel for the proposed intervenor explained during oral argument, part of the delay in the writing and mailing of the demand may have been attributable to the Labor Day weekend.

In view of the above facts, dismissal of the insufficient amended complaint of the proposed intervenor would at this stage be too harsh a remedy. *See Brody v. Chemical Bank (Brody I)*, 482 F.2d 1111, 1114 (2d Cir.), *cert. denied*, 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973). The order of this court issued October 19, 1979, provided:

> The motion to vacate this court's order of September 18, 1979 allowing intervenor Lucker to file an amended complaint in accordance with this court's opinion and order of August 31, 1979 is granted. Intervenor is allowed until November 30, 1979 to file a revised amended complaint after a response to his demand has been acted upon by the Board. . . .

Of course, after the filing of a revised amended complaint, defendants may then challenge its sufficiency. The ruling of this court in its August 31, 1979, opinion still applies with full force:

> If Mr. Lucker fails to amend his pleadings in a proper manner or if the court finds that the reasons alleged for failing to make demand upon the board are insufficient, then the motion to intervene will be denied with prejudice. If that motion is denied, then the main actions will be dismissed in accordance with this court's order of May 23.

*Siegal v. Merrick, supra,* at 6.

SO ORDERED.